STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-23-2

JUL 21 '23 AM8:46
ANDRO SUPERIOR COURT

SULTAN CORP.,

    Plaintiff

v.

DECISION AND ORDER ON REMAND

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION
and MAINE BOARD OF
ENVIRONMENTAL PROTECTION

    Defendant

The matter before the court is petitioner Sultan Corp.'s ("Sultan") 80C appeal of a December 15, 2022 decision by the Maine Board of Environmental Protection (the "Board") upholding a "Cleanup Order" against Sultan. This matter has been before the court once previously and is returning on appeal after remand by the Law Court.

Background

This case concerns a property located at 7 Chestnut Street in Auburn, Maine, consisting of three parcels (the "Site"). (R. Tab 66, Ex. C-8.) The Site has one fifteen-unit apartment building located on it. (*Id.*) Sultan has owned the Site since 2003. (R. Tab 66, Ex. C-9.) Sultan acquired the Site from Atlantic Holdings, LLC ("Atlantic Holdings"). (R. Tab 66, Ex. C-1, at 4.) Atlantic Holdings, in turn, acquired the Site from Parkview Apartments, LLC, also during 2003. (*Id.*) Parkview Apartments, LLC acquired the Site from Parkview Associates, LLC on July 21, 2000. (*Id.*) Parkview Associates, LLC acquired the Site from Beal's Laundry on October 31, 1985. (*Id.*)

1

Beal's Laundry operated dry cleaning facilities on the Site from approximately 1950 to 1986. (R. Tab 66, Ex. C-17, at 1.) In 2013, the Department of Environmental Protection ("DEP") began to test former dry-cleaning sites for hazardous substances. (R. Tab 82, at 16:20-23.) The DEP, through a consultant, conducted testing at the Site and found the volatile organic compounds Trichloroethylene ("TCE") and Perchloroethylene ("PCE") contaminating the soil and groundwater. (R. Tab 66, Ex. C-4.) The Commissioner believed that these compounds posed a health risk to people on living on the Site because TCE and PCE vapors were found in dangerous quantities in apartments on the Site. (R. Tab 5, at 2-3.) The DEP installed a sub-slab depressurization system ("SSDS") to mitigate the potential health risk to people who lived on the Site. (R. Tab 5, at 10.) The SSDS redirects vapors emanating from soil, soil gas and groundwater away from occupied spaces in the building. (R. Tab 5, at 3.)

The Commissioner believed that a long-term solution to the Site's contamination was necessary. The SSDS lowers the concentration of dangerous vapors in the occupied areas on the Site, but it does not remove the source of those vapors. (R. Tab 5, at 11.) The DEP found that contamination levels are unlikely to significantly decrease in the foreseeable future. (*Id.*) Without a permanent solution, the SSDS would need to be maintained indefinitely. (*Id.*) The Commissioner consulted with Ransom Consulting, Inc. ("Ransom"), to analyze what options were available for a more permanent solution. (*Id.*) Ransom evaluated seven possible options, each assigned a letter from A through G.

On May 10, 2018, the Commissioner issued an order designating the Site an uncontrolled hazardous substance site pursuant to 38 M.R.S. § 1365(1). (R. Tab 5, at 4.) Once a site has been designated as an uncontrolled hazardous substance site, the statute provides that the Commissioner of the DEP ("Commissioner") may "[o]rder any responsible party dealing with

2

the hazardous substances to cease immediately or to prevent that activity and to take an action necessary to terminate or mitigate the danger or likelihood of danger." 38 M.R.S. § 1365(1)(B) (2021). Pursuant to this authority, the Commissioner's order requires Sultan to submit a plan for remediation of the Site following Alternative E from Ransom's report.[1] (R. Tab 5, at 12.) The original order also sought to recoup the DEP's costs, but the Commissioner consented to that provision's removal on appeal. (R. Tab 5, at 4.)

Sultan appealed the Commissioner's order to the Board on June 7, 2018. On appeal, Sultan relied in part on a third-party defense it refers to as the "innocent landowner defense."[2] This defense is found in 38 M.R.S. § 1367(3), which provides, in the relevant part:

> [a] person who would otherwise be a responsible party shall not be subject to liability under this section, if he can establish by a preponderance of the evidence that threats or hazards posed or potentially posed by an uncontrolled site, for which threats or hazards he would otherwise be responsible, were caused solely by . . . [a]n act or omission of a 3rd party who is not that person's employee or agent.

Sultan argued before the Board that this defense applied to its conduct in this case. § 1367 concerns actions by the DEP to recoup costs it incurs resulting from "hazardous substances at the site or from the acts or omissions of a responsible party with respect to those hazardous substances and for the abatement, cleanup or mitigation of the threats or hazards posed or potentially posed by an uncontrolled site . . ." The Commissioner argued that because the order was no longer seeking to recoup costs, the third-party defense was not available.

---

[1] Alternative E calls for air sparging to strip contaminants from soil and groundwater in conjunction with soil vapor extraction to control vapor-phase contaminant migration. (R. Tab 5, at 11-12.) The technical details of this process, or of any of the alternatives, are not at issue in this lawsuit.

[2] To avoid confusion, the court will adopt the terminology used by the Law Court and refers to the defense at issue as the "third-party defense."

3

Joseph Dunne ("Mr. Dunne"), agent for Sultan, testified before the Board. Mr. Dunne testified that he became aware of the property in 2003, when an agent for Parkview Apartments, LLC, asked him if Sultan would be interested in acquiring the Site. (R. Tab 82, at 167: 1-4.) Mr. Dunne testified that Sultan did not have the funds to purchase the property at that time, but that he notified an agent of Atlantic National Trust because he believed they might be interested in acquiring the property. (*Id.* at 167: 4-8.) Mr. Dunne testified that one of Atlantic National Trust's entities, Atlantic Holdings, purchased the Site from Parkview Apartments, LLC. (*Id.* at 167: 21-23.) Mr. Dunne testified that Sultan purchased the property from Atlantic Holdings shortly afterwards because "Atlantic was able to assist with the financing." (*Id.* at 167: 25, at 168:1-4.) Mr. Dunne testified that he had walked through the Site and had been told by Parkview's agent that the Site was given a "clean bill of health," but that he did not do any additional investigation. (*Id.* at 167: 9-21; *Id.* at 168: 20-21.)

Mr. Dunne testified that Sultan performed a title search, but only back to when Atlantic Holdings purchased the property. (*Id.* at 171: 10-11.) Mr. Dunne testified that he assumed that Atlantic Holdings would have done a title search back to when there was a title policy, but did not testify that he knew Atlantic Holdings had actually done so. (*Id.* at 171: 5-15.) Mr. Dunne testified that he did not conduct a survey of the property. (*Id.* at 171: 16-17.) Mr. Dunne testified that Atlantic Holdings did not require him to conduct a Phase 1 Environmental Site Assessment, and that he has never done a Phase 1 Environmental Site Assessment for any of the "probably 400" buildings he has bought. (*Id.* at 176: 1-4; *Id.* at 177: 9-10; *Id.* at 178: 6-9.) Mr. Dunne testified that he did not know of anyone else who conducted Phase 1 Environmental Site Assessments for commercial buildings they purchased. (*Id.*)

4

The Board upheld the Commissioner's order, ruling that the Commissioner had the authority to order Sultan to remediate the site following Alternative E from Ransom's report. (R. Tab 5, at 14.) The Board held that it need not reach the issue of whether the third-party defense is a defense to a § 1365 order because Sultan failed to meet its burden to prove the elements of the defense even if it applied. (R. Tab 5, at 16.) The Board further held that the Commissioner had established that all of the ordered actions were "necessary to terminate or mitigate the danger or likelihood of danger posed by the hazardous substances at the Site to the public health, to the safety of persons and the environment." (R. Tab 5, at 16.)

Sultan appealed the January 17, 2019 Board Order to this court on February 19, 2019. The court affirmed the Board Order on July 30, 2021, finding that the third-party defense did not apply to actions under 38 M.R.S. § 1365 under the plain language of the statute, and that the Board had not erred by finding that Sultan failed to meet the elements of the defense regardless.

Sultan appealed the ruling to the Law Court. The Law Court held that the Board erred by failing to decide whether the third-party defense was available under the statute, which it ruled was a threshold issue which must be decided before the Board could reach the merits of the defense. *Sultan Corp. v. Dep't of Envtl. Prot.*, 2022 ME 21, ¶ 10, 272 A.3d 296. The Law Court held that the Board need only rule on the availability of the defense, and that if it concluded that the defense was available, the Board's original conclusion that Sultan had failed to meet the elements of that defense would then become ripe for review. *Id.* ¶ 11 n.4.

Accordingly, this court remanded the matter to the Board for proceedings consistent with the Law Court's decision on April 28, 2022. The Board received additional briefing and heard oral arguments from the parties on November 3, 2022. (R.R. 2, 2.) On December 15, 2022, the Board issued its Order on Remand, finding that the plain language of § 1367 limits the

5

availability of the third-party defense to "responsible parties in cost recovery and natural resource damages actions." (R.R. 2, 6.) Sultan appealed the December 15, 2022 order on January 13, 2023.

Standard

The court directly reviews an agency decision "for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Merrill v. Me. Pub. Emples. Ret. Sys.*, 2014 ME 100, ¶ 13, 98 A.3d 211 (quotation omitted). The court acting in an appellate capacity will not vacate an agency's factual findings unless they are clearly erroneous. *Suzman v. Comm'r, Dep't of Health & Human Servs.*, 2005 ME 80, ¶ 24, 876 A.2d 29. The court will sustain the administrative decision if, "on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "Inconsistent evidence will not render an agency decision unsupported." *Id.*

"In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute." *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. The court reviews an agency's interpretation of its statute by looking to the plain language of the statute. *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 15, 60 A.3d 1272. When the statute is ambiguous, the court will review "whether the agency's construction is reasonable." *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 11, 926 A.2d 1197 (quotation omitted). However, the court "must always consider whether a given interpretation is consistent with the legislative intent and avoids absurd, illogical, or inconsistent results." *Mosher v. State Harness Racing Comm'n*, 2016 ME 104, ¶ 8, 144 A.3d 42.

Discussion

The issue on this appeal is very narrow. The Law Court remanded the matter to the Board to address the threshold question of whether the third-party defense provided for in § 1367(3) is available in proceedings under §1365, and specifically directed the Board that it was not to consider evidence relevant to the merits of the third-party defense if it found that the defense is not available. *Sultan Corp. v. Dep't of Envtl. Prot.*, 2022 ME 21, ¶ 10, 272 A.3d 296. The Board ruled that the third-party defense is not available due to the plain language of § 1367, and accordingly did not reach the merits of the defense.[3] The court's analysis on appeal is therefore limited to whether the Board was correct that the third-party defense does not apply.

As it relates to this case, §1365 allows the Commissioner to, upon finding that a location where hazardous materials are located poses a danger to the public health, designate the location an "uncontrolled hazardous substance site." 38 M.R.S. § 1365(1)(A). After designating the location an uncontrolled hazardous substance site, the DEP is empowered by §1365(1)(B) to, in its discretion, order any "responsible party dealing with the hazardous substances"[4] to take an

---

[3] The Board also rejected Sultan's argument that it had discretion under 38 M.R.S. § 1365(4) to apply the defense even if it was not available under the statute. The court disagrees with the Board's interpretation of the statute, and therefore need not reach the issue of whether the Board had discretion to consider the defense regardless.

[4] The Department acted under § 1365 when it ordered Sultan to conduct specific remedial measures at the site. Critically, the DEP may only order a "responsible party dealing with the hazardous substances" to take remedial action under § 1365(1)(B). A "responsible party" is defined in the statute as follows:

A. The owner or operator of the uncontrolled site;

B. Any person who owned or operated the uncontrolled site from the time any hazardous substance arrived there;

C. Any person who arranged for the transport or handling of a hazardous substance, provided that the substance arrived at the uncontrolled site; and

D. A person who accepted a hazardous substance for transport, if substance arrived at the uncontrolled site. After April 1, 1992, a person who accepts a hazardous substance for transport and delivers that substance to a licensed hazardous waste storage, treatment or

7

action necessary to terminate or mitigate the danger. The DEP may also order any person contributing to the danger to cease or prevent their contribution. 38 M.R.S. § 1365(1)(C). Additionally, the Attorney General may file a lawsuit in Superior Court to compel a responsible party to abate, clean up or mitigate threats or hazards on an uncontrolled site. 38 M.R.S. § 1365(5).

Alternatively, the DEP has the authority to "take whatever action necessary to abate, clean up or mitigate the threats or hazards posed or potentially posed by an uncontrolled site or to protect the public health, safety or welfare or the environment, including administering or carrying out measures to abate, clean up or mitigate the threats or hazards, and implementing remedies to remove, store, treat, dispose of or otherwise handle hazardous substances located in, on or over an uncontrolled site, including soil and water contaminated by hazardous substances." 38 M.R.S. § 1364(5). This includes the power to acquire property "by purchase, lease, condemnation, donation or otherwise" any property that the Board determines "is necessary to conduct remedial actions in response to threats or hazards posed or potentially posed by an uncontrolled site."[5] 38 M.R.S. § 1364(7). This includes the right to exercise the power of

---

> disposal facility according to the manifest signed by the generator is not a responsible party.

38 M.R.S. § 1362(2). The statute does not define what it means by "dealing with the hazardous substances." This qualifying phrase strikes the court as significant, especially in light of the fact that the Board consistently omits "dealing with the hazardous substances" from its citations of § 1365(1)(B), and because § 1365(5) specifically provides for the Attorney General to bring an action in Superior Court "to compel any responsible party to abate, clean up or mitigate threats or hazards posed or potentially posed by an uncontrolled site." The court is unsure what the Legislature intended "dealing with the hazardous substances" to mean. At the same time, this issue appears to be outside the limited scope of the remand order by the Law Court.

[5] The Board may acquire property to conduct remedial actions "including, but not limited to:

A. Actions to prevent further threats or hazards and to mitigate or terminate the threats or hazards;
B. Actions to clean up soils and ground water and remove hazardous substances from an uncontrolled site; and

eminent domain. *Id.* If the State does expend costs in this manner, it may attempt to recoup those costs under 38 M.R.S. § 1367.

In summary, when the DEP becomes aware of a site that poses a danger to the public health, it has two possibilities open to it. It may, in its discretion, choose to solve the problem itself, taking actions necessary to abate, clean up or mitigate the threat to public health up to and including exercising the power of eminent domain to seize the site. This authority is granted by 38 M.R.S. § 1364. Alternatively, the Commissioner may choose to order a "responsible party dealing with the hazardous substances" to take an action necessary to terminate or mitigate the danger or order a person contributing to the danger to stop contributing to the danger. This power is granted by 38 M.R.S. § 1365(1)(B) and § 1365(1)(C), respectively. Finally, 38 M.R.S. § 1365(5) gives the Attorney General the authority to file a lawsuit in Superior Court to compel a responsible party to abate, clean up or mitigate the danger.

Here, the DEP chose to proceed under the authority granted by 38 M.R.S. § 1365(1)(B). DEP found that Sultan was a responsible party under the definition provided by 38 M.R.S. § 1362(2). § 1362(2) provides that the owner or operator of the uncontrolled site is a responsible party. There is no dispute that Sultan owns the site.

The third-party defense appears in 38 M.R.S. § 1367, which provides:

> Each responsible party is jointly and severally liable for all costs incurred by the State resulting from hazardous substances at the site or from the acts or omissions of a responsible party with respect to those hazardous substances and for the abatement, cleanup or mitigation of the threats or hazards posed or potentially posed by an uncontrolled site, including, without limitation, all costs of acquiring property. . . .
>
> A person who would otherwise be a responsible party is not subject to liability under this section, if the person can establish by a preponderance of the evidence that threats or hazards posed or potentially posed by an uncontrolled site, for

---

C. Replacement of water supplies contaminated or threatened by hazardous substances."

which threats or hazards the person would otherwise be responsible, were caused solely by:

. . .

3. Act or omission. An act or omission of a 3rd party who is not that person's employee or agent. A person seeking relief from liability for the acts or omissions of a 3rd party shall also demonstrate by a preponderance of the evidence that that person exercised due care with respect to the hazardous substance and uncontrolled site concerned, taking into consideration the characteristics of that substance and site, in light of all relevant facts and circumstances and that that person took precautions against foreseeable acts or omissions of any such 3rd party and the consequences that could foreseeably result from such acts or omissions.

. . . .

The DEP points to the language stating that the defense is applicable to liability "under this section." The DEP argues that the liability imposed under § 1367 is limited in scope, and only applies to actions brought by the DEP to recoup costs. Therefore, the DEP argues, the enumerated defenses do not apply to orders made under the authority granted by § 1365(1)(B). Sultan argues that this interpretation leads to illogical and absurd results. Sultan argues that the correct interpretation, based on the plain language and legislative history of the statute, is that § 1367 is broader, and defines the scope of a responsible party's liability for both costs incurred by the State and abatement actions ordered under § 1365. While the court acknowledges that this is a departure from its order in the prior appeal, with the benefit of additional briefing and further consideration of the statute the court finds that the third-party defense does apply to actions under § 1365.

The plain language of § 1367 limits the applicability of the third-party defense to liability imposed under "this subsection," meaning § 1367. Therefore, the relevant question is the scope of the liability imposed under § 1367, and whether it extends to orders to take remedial action entered pursuant § 1365(1)(B).

The scope of the liability imposed by § 1367, as least it relates to this lawsuit, is described by the first sentence of § 1367. After carefully examining the text of the statute, the court finds that the plain language provides for each responsible party to be jointly and severally liable for two things. First, each responsible party is liable for "all costs incurred by the State resulting from hazardous substances at the site or from the acts or omissions of a responsible party with respect to those hazardous substances." 38 M.R.S. § 1367. Second, each responsible party is liable for "the abatement, cleanup or mitigation of the threats or hazards posed or potentially posed by an uncontrolled site, including, without limitation, all costs of acquiring property." To illustrate the court's construction, the court breaks the first sentence of § 1367 down as follows:

> Each responsible party is jointly and severally liable for:
>
> **(1)** all costs incurred by the State resulting from hazardous substances at the site or from the acts or omissions of a responsible party with respect to those hazardous substances; and **for**
>
> **(2)** the abatement, cleanup or mitigation of the threats or hazards posed or potentially posed by an uncontrolled site, including, without limitation, all costs of acquiring property.

*See* 38 M.R.S. § 1367 (spacing and emphasized text added). As Sultan correctly points out, this is the only construction of that sentence which makes grammatical sense of the repeated use of the word "for." To construe the statute as a single, continuous statement of liability for the costs incurred by the State would require the court to ignore the second use of the word "for". The use of a repeated preposition "for" indicates an intent to make a list, with the beginning of each item in the list marked by the preposition. If the second "for" was omitted, the sentence would read as the DEP suggests, and the sentence would be a list of costs the State could sue to recoup.

11

However, with its inclusion, the sentence imposes joint and several liability "for" two different things.

Further, the court agrees with Sultan that the DEP's construction of the statutory scheme would lead to absurd and illogical results. The DEP would interpret the statutory scheme to provide a number of affirmative defenses to liability for costs incurred by the State if it chooses to proceed under 38 M.R.S. § 1364, but deny these defenses to a party if the State, in its discretion, proceeds under 38 M.R.S. § 1365. Naturally, this would build in a structural incentive for the DEP to avoid acting under § 1364 to decrease the likelihood that a party will raise a valid affirmative defense.

This problem is not resolved, as the DEP would have it, by the paramount State interest in promptly addressing and remediating hazardous substance sites that "outweighs any burden, economic or otherwise." *See* 38 M.R.S. § 1361. The court acknowledges that the Legislature placed a strong emphasis on promptly and effectively remediating hazardous substance sites when it drafted this law. This interest would explain a statutory scheme which did not grant a third-party defense at all. However, this interest does not explain a statutory scheme which grants the third-party defense to some parties and denies it to others based on how the State chooses to bring the action.[6] This interpretation is plainly unreasonable. Additionally, the incentive this interpretation would build in would actually undermine the Legislature's goal of *promptly* addressing hazardous substance sites by encouraging the DEP to order parties to take remedial actions themselves, which as this appeal demonstrates, can result in lengthy delays in remediating the danger at the site.

---

[6] The court commented on the strangeness of the interpretation of the statutory scheme proposed by the DEP during the last appeal. *See Sultan Corp. v. Me. Dep't of Envtl. Prot.*, No. AP-19-3, 2021 WL 5881551, at * 6 n.3 (Me. Sup. Ct. July 31, 2021).

For the reasons discussed, the court finds that the Board erred when it ruled that the third-party defense was not available. However, this only brings the court to the same place that its analysis ended in the previous appeal. As the Law Court stated, if the third-party defense is available under § 1367, the portion of the Board's prior decision holding that Sultan failed to meet its burden to prove the defense becomes ripe for review. At the direction of the Law Court, the Board did not address this issue on remand, and the issue was not briefed on appeal. This court, however, did choose to address that issue in its previous order. *See Sultan Corp. v. Me. Dep't of Envtl. Prot.*, No. AP-19-3, 2021 WL 5881551, at * 7-8 (Me. Sup. Ct. July 31, 2021). Ultimately, the court found that the Board's findings were supported by competent evidence in the record and supported its decision. That analysis still stands. Accordingly, the court must vacate the Board's order on remand, but affirm its ultimate decision.

The entry is

> The decision of the Maine Board of Environmental Protection on remand is VACATED as to its conclusion that the third-party defense is not available in actions brought under 38 M.R.S. § 1365. The portion of the Board's January 17, 2019 which found that Sultan failed to meet its burden to prove the defense is therefore ripe for review and is hereby AFFIRMED.
>
> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: July 21, 2023

Harold Stewart, II
Justice, Superior Court

13